**AMERICAN SAMOA GOVERNMENT, Plaintiff**

**v.**

**TAMASAMOA TAUAI, Defendant**

High Court of American Samoa
Trial Division

CR No. 7-93

April 29, 1993

Before KRUSE, Chief Justice, MAILO, Associate Judge, and BETHAM, Associate Judge.

Counsel: For Plaintiff, Donald M. Sheehan, Assistant Attorney General
For Defendant, Afoa L. Su'esu'e Lutu

Defendant Tamasamoa Tauai brought two pre-trial motions.

*A. On Motion for Severance*

Defendant joins in the motion by co-defendant Eti Fealoafa'i, to sever his trial from that of the other defendants. He asserts that if this is not done, the jury will infer conduct of his co-defendants upon him, in contravention of his right to an impartial jury. Additionally, he maintains that, due to the large number of defendants and the relatively small number of peremptory challenges, he will face a jury containing members that "he does not want there."

We note at the outset that the decision to sever properly-joined defendants (and all parties have agreed that defendants were properly

joined, per T.C.R.Cr.P. 8(b)) is made at the sound discretion of the trial court. *See, e.g.*, *United States v. Lane*, 474 U.S. 438, 449, n.12 (1986). The United States Supreme Court has stated that a

> court should grant a severance under Rule 14 [the equivalent of T.C.R.Cr.P. 14] only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. . . . For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened.

*Zafiro v. United States*, 61 U.S.L.W. 4147, 4148 (U.S. Jan. 26, 1993) (No. 91-6824). While none of these factors mandates that a separate trial be granted, they are to be considered in deciding upon a severance motion.

Defendant's contention that he will be unable to utilize his peremptory challenges to screen out jurors that he does not want is wholly lacking in merit. It is well-settled that a defendant does not have the right to a trial by any particular jury or jurors, but only to a trial by a competent and impartial jury. In addition, T.C.R.Cr.P. 24(b) gives the trial court discretion, in joint trials, to grant additional peremptory challenges to the defendants, so as to relieve possible inequities of such trials.

Taking into account all of the above considerations, the court agrees to spare the defendant the possible burden of being tried together with eight other defendants. Utilizing the sound discretion which informs the decision to sever co-defendants under T.C.R.Cr.P. Rule 14, we order that defendant Tamasamoa Tauai shall be tried together with defendants Ronald Tui, Fautua Maiava, and Peniamina Wilson.

The Motion for Severance is therefore GRANTED on the conditions stated above.

## B. On Motion to Suppress Statements

The defendant states that he gave statements to investigators on three occasions: a written statement on December 29, 1992; an oral statement on January 7, 1993; and another written statement on January 12, 1993. All of these statements, the defendant asserts, were made in custodial situations, involuntarily, and without a proper waiver of "Miranda rights."

With respect to the written statement given on December 29, 1992, we find that no custodial situation existed, there being no indication that the statement made at that time was anything less than voluntary. A more complete discussion is contained in our Order dated April 28, 1993, in CR No. 03-93 and, for reasons of brevity, will not be repeated here. With respect to the other two statements, however, we are faced with contradictory versions of what occurred.

The Attorney General's investigator, Sam Matagi, testified that he orally informed the defendant of his constitutional rights prior to obtaining the oral statement on January 7. Indeed, as an added precaution, he simultaneously obtained the signature of the defendant on a standard Department of Public Safety waiver of constitutional rights. The defendant acknowledges that this took place. However, he raises two objections. In his written motion to suppress, he asserts that the waiver was made "in a coercive atmosphere which vitiated any purported waiver of Miranda rights." At the hearing, he stated that, on January 7, Matagi told him to sign the standard waiver form without discussing its contents. This testimony contradicts both his pleadings and the testimony of Matagi, and for that reason will be discounted.

Likewise, we look upon the claim that the January 7 statement was given in an atmosphere so coercive as to negate the defendant's waiver with skepticism. Matagi telephoned the defendant and requested that he come down to the Attorney General's Office to be interviewed. The defendant did not refuse but came willingly. Matagi told him he was not in custody and was free to leave at any time. After the process was completed, the defendant was not placed in custody but left freely. These are not the hallmarks of an overly coercive atmosphere.

On January 12, 1993, Matagi called the defendant back to the Attorney General's Office to provide a written statement. Matagi again told him that he was not in custody and was free to leave at any time. Although he did not specifically re-read the defendant his *Miranda* rights,

25

he did state that the defendant retained those rights and could stop writing whenever he wished. At this point, two versions of the ensuing events emerge. The defendant asserted that he initially wrote a statement which read, roughly, "Today, this morning, I am not going to make a statement to you." When he presented this to Matagi, the latter looked at it and told him to write another statement. He then did so, producing the statement which defendant now seeks to suppress.

Matagi, however, recalls differently. He stated that he asked the defendant to voluntarily write a more specific accounting of the events they had previously discussed five days earlier. Matagi left the room, and when he came back, the defendant produced such a statement.

We are disinclined to believe that Matagi refused to accept the defendant's written refusal to give a statement. Such an act would be at odds with that investigator's conduct and would be against the prosecution's interest. It would not, however, be against the defendant's interest. We are asked, essentially, to make a choice of who to believe. Upon the testimonies presented, we believe that there was only one written statement prepared by the defendant on that day.

The Motion to Suppress the Statements of the Defendant is therefore DENIED.

It is so ordered.